UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RAYTHEON COMPANY, a Delaware corporation, | § § § § | |
| Plaintiff, | § § | Case No. 4:07 cv 109 |
| vs. | § § | |
| INDIGO SYSTEMS CORPORATION, a California corporation, and FLIR SYSTEMS, INC., an Oregon corporation, | § § § § | **TRIAL BY JURY DEMANDED** |
| Defendants. | § § | |

## COMPLAINT

Plaintiff, Raytheon Company ("RAYTHEON") hereby complains of Defendants, Indigo Systems Corporation ("INDIGO") and FLIR Systems, Inc. ("FLIR") as follows:

## JURISDICTION AND VENUE

1.  The present action alleges infringement of certain United States Patents under 35 U.S.C. § 271, trade secret misappropriation under Texas common law, the Texas Theft Liability Act and California Civil Code §§ 3426, *et seq.*, unfair competition and intentional interference with existing and prospective business relationships.

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

3.  The Court has personal jurisdiction over each Defendant. Each Defendant has conducted and does conduct business within the State of Texas. Each Defendant contracts with Texas entities and does business within the State of Texas. Moreover, each Defendant, directly and/or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises its products, including those identified in Counts I – VI,

below, in the United States, the State of Texas, and the Eastern District of Texas.  Each Defendant has purposefully and voluntarily placed one or more of its infringing products, including products made using infringing methods, and one or more products incorporating misappropriated trade secrets and/or manufactured or processed using misappropriated trade secrets, and products made using infringing methods, as described below in Counts I - VI, into the stream of commerce with the expectation that they will be purchased by consumers in the Eastern District of Texas. These products have been and continue to be purchased by consumers in the Eastern District of Texas.

4. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## PARTIES

5. RAYTHEON is incorporated in the State of Delaware and has its principal place of business at 870 Winter Street, Waltham, Massachusetts 02451.  RAYTHEON is an industry leader in defense and government electronics, space technical services, and business and special mission aircraft, with annual worldwide sales of over $20 billion.  RAYTHEON, through Raytheon Vision Systems ("RVS"), is one of the premier innovators in the field of infrared detectors and cameras. RVS is part of RAYTHEON's business unit known as Network Centric Systems, which is headquartered at 2501 West University Drive, McKinney, TX 75071.  All references to RAYTHEON shall be deemed to include, as appropriate by the context, but is not limited to its relevant affiliates, business units, and predecessors in interest with respect to the subject matter hereof, including but not limited to RAYTHEON's RVS business and Amber Engineering.

6. INDIGO is currently a wholly owned subsidiary of FLIR, and is incorporated in the State of California, with its principal place of business at 70 Castilian Drive, Goleta, California, 93117.

7. FLIR is incorporated in the State of Oregon and has its principal place of business at 27700A SW Parkway Avenue, Wilsonville, Oregon 97070.  FLIR can be served with process

through its registered agent for service of process, CT Corporation System, 818 West Seventh St., Los Angeles, CA 90017. In 2004, FLIR acquired INDIGO, and announced that the acquisition had added significantly to [its] technology base and in-house expertise, particularly in the area of integrated circuit design, infrared detector technology. All references herein to INDIGO and FLIR shall be interchangeable.

## FACTS

8.  Throughout the 1980s and 1990s RAYTHEON and/or its predecessors conducted pain-staking research and development in infrared technology. RAYTHEON became the acknowledged market leader in infrared technologies for both military and commercial applications.

9.  In March 1996, one former high-ranking RVS executive, along with two employees of RAYTHEON's predecessors, resigned to start a new company, INDIGO, which they claimed was going to provide independent consulting to companies like RAYTHEON. These three, among others, all had intimate knowledge of RAYTHEON's trade secrets. INDIGO specifically represented to RAYTHEON management that INDIGO wanted to support RAYTHEON's continued development of ever-more-sophisticated read-out integrated circuits for various applications and that it would not compete in the business of manufacturing and sales of FPA (Focal Plane Arrays) and ROIC (Read Out Integrated Circuits) – the key components in infrared camera technology. After leaving RAYTHEON, INDIGO implemented a fundamental change in its business plan and decided to become a direct competitor of RAYTHEON in both the 'cooled' and 'uncooled' Focal Plane Array (FPA) business. Focal Plane Arrays are the "film" used in infrared sensing technologies and are the key components of the cameras.

10. RAYTHEON has been the recognized world leader in infrared detection technology. It has designed, developed and manufactured two types of infrared detectors – cooled

and uncooled. Uncooled infrared detectors power infrared camera devices in a variety of applications in law enforcement, fire fighting, industrial, automotive, and military applications. Cooled infrared detectors offer state-of-the-art infrared capabilities and are used extensively in highly secret military applications from missile guidance systems to fighter aircraft, tanks and naval warships.

11. INDIGO knew that creating a fully functional infrared FPA and ROIC capability from scratch would require years of research and development and trial and error. There are few competitors in this highly specialized and lucrative market and little, if any, shared technology in the public domain. INDIGO embarked on a calculated course of action to jump to market by undertaking a systematic effort to hire away key scientists and technicians from RAYTHEON in each of the critical research and design disciplines where INDIGO lacked the knowledge necessary to compete. Since its founding, INDIGO has systematically hired more than thirty (30) RAYTHEON employees who had knowledge of one or more of RAYTHEON's trade secrets. INDIGO has introduced various competing infrared detection products in a fraction of the time ordinarily expected for the research and development of such complex and secretly developed products. By using RAYTHEON's patented technology and misappropriating numerous proprietary RAYTHEON trade secrets, INDIGO successfully competed for and won major government contracts for the Joint Strike Fighter program, the next generation of U.S. military fighter aircraft ("JSF"); The Litening program, which supported infrared camera technology to the U.S. military for tactical use; and the Armed Reconnaissance Helicopter program ("ARH"), the next generation of reconnaissance helicopter for U.S. military forces. In the commercial sector, INDIGO used its improperly obtained special knowledge to compete for and obtain large commercial contracts, including contracts in automotive, mining, law enforcement and other commercial applications. But for INDIGO's wrongful misappropriation and use of

RAYTHEON's proprietary technology and patented inventions, INDIGO would neither have been capable of competing for nor been awarded the contracts and such contracts would, by necessity, have been awarded to RAYTHEON.

## COUNT I

### TORTIOUS INTERFERANCE WITH EXISTING CONTRACTS AND PROSPECTIVE BUSINESS RELATIONSHIPS

12. RAYTHEON incorporates herein the allegations of Paragraphs 1 through 11.

13. Defendants, through their employees, agents, consultants, subcontractors, subsidiaries and parents, intentionally interfered with RAYTHEON's existing contracts and prospective business relationships both in commercial and military business sectors, in both cooled and uncooled technology. This interference included deliberate and successful efforts to destroy RAYTHEON's market share using stolen and infringing technology, which enabled them to produce products at a competitive price advantage. INDIGO was able to achieve its unbelievable price differential by avoiding expensive research and development costs and efforts necessary to successfully design and mass produce high-quality cooled and uncooled FPAs, ROICs and related components. As such, Defendants tortiously interfered with RAYTHEON's existing contracts. Moreover, there was a reasonable probability and expectation that RAYTHEON would have entered into a business relationship with entities in the commercial and military sectors but for Defendants' intentional interference and wrongful acts.

14. As a direct and proximate result of Defendants' interference, Plaintiff has suffered, and will continue to suffer, damages resulting from loss of military contracts, such as the JSF, Litening, and ARH programs, and commercial business, including but not limited to its loss of the BMW contract and other commercial product applications.

## COUNT II

## PATENT INFRINGEMENT--'663 PATENT

15. RAYTHEON incorporates herein the allegations of Paragraphs 1 through 14.

16. RAYTHEON is the owner of all right, title and interest in and to United States Patent No. 5,021,663 (the '663 Patent) with the right to recover damages for all past infringement of the patent.

17. The '663 Patent pertains, among other things, to the design of, and method of fabrication of, certain aspects of focal plane arrays for use in uncooled infrared detectors.

18. The '663 Patent issued June 4, 1991.  Following re-examination by the United States Patent Office, a certificate of re-examination was issued on July 1, 1997.  A true and correct copy of the '663 Patent together with its re-examination certificate is attached hereto as Exhibit 1.

19. INDIGO and FLIR have made, used, offered for sale, and sold products, or used methods that infringe upon RAYTHEON's rights under the '663 Patent.

20. Upon information and belief, INDIGO and FLIR were each aware of the '663 Patent prior to the commission of some or all of the infringing acts alleged herein, and their infringement has been willful.

21. As a result of the infringement by INDIGO and FLIR, RAYTHEON has been damaged.

22. The willful infringement of the '663 Patent by INDIGO and FLIR makes this an exceptional case under 35 U.S.C. § 285.

## COUNT III

### PATENT INFRINGEMENT--'943 AND '437 PATENTS

23. RAYTHEON incorporates herein the allegations of Paragraphs 1 through 22.

24. RAYTHEON is the owner of all right, title and interest in and to United States Patent Nos. 5,449,943 (the '943 Patent) and 5,646,437 (the '437 Patent) with the right to recover damages for all past infringement of these patents.

25. The '943 and '437 Patents each pertain, among other things, to the design of, and method of fabrication of, focal plane arrays for use in indium antimonide ("InSb") cooled infrared detectors.

26. The '943 Patent issued September 12, 1995.  A true and correct copy of that patent is attached hereto as Exhibit 2.

27. The '437 Patent issued July 8, 1997.  A true and correct copy of that patent is attached hereto as Exhibit 3.

28. INDIGO and FLIR have made, used, offered for sale, and sold products, or used methods that infringe upon RAYTHEON's rights under the '943 Patent and '437 Patent.

29. Upon information and belief, INDIGO and FLIR were each aware of the '943 and '437 Patents prior to the commission of some or all of the infringing acts alleged herein, and their infringement has been willful.

30. As a result of the infringement by INDIGO and FLIR, RAYTHEON has been damaged.

31. The willful infringement of the '943 and '437 Patents by INDIGO and FLIR make this an exceptional case under 35 U.S.C. § 285.

## COUNT IV

## PATENT INFRINGEMENT-- '820 PATENT AND '908 REISSUE

32. RAYTHEON incorporates herein the allegations of Paragraphs 1 through 31.

33. RAYTHEON is the owner of all right, title and interest in United States Patent No. 5,043,820 ( the '820 Patent) and Reissued United States Patent No. RE 34,908 (the '908 Reissue) (collectively, the ROIC Patents) with the right to recover damages for all past infringement of these patents.

34. Each of these patents pertains to designs of readout integrated circuits ("ROICs") that seek, among other things, to simplify the number of transistors required to perform the necessary processing of the signals received from the individual infrared detector elements.

35. The application for the '820 Patent was filed on March 27, 1989 and the patent issued on August 27, 1991. A true and correct copy of that patent is attached hereto as Exhibit 4.

36. The original application relating to the '908 Reissue was filed on March 27, 1990. An initial patent issued from that application on January 22, 1992. Subsequently, an application for reissue was properly filed on January 24, 1994. That application was granted by the United States Patent Office and the '908 Reissue issued on April 18, 1995. A true and correct copy of the '908 Reissue is attached hereto as Exhibit 5.

37. A high-ranking senior design engineer of RAYTHEON resigned to co-found Defendant INDIGO. Prior to his resignation, he was engaged in the design of ROICs. He worked during this period with one or more of the named inventors on these ROIC Patents, and he would have been familiar with the '820 Patent and '908 Reissue owned by RAYTHEON.

38. Raytheon has previously warned INDIGO against infringing these ROIC patents.

39. In spite of their awareness of RAYTHEON's ROIC patents, INDIGO and FLIR have made, used, offered for sale, and sold products, or used methods that infringe upon RAYTHEON's rights under the '820 Patent and '908 Reissue.

40. On information and belief, INDIGO and FLIR have willfully and knowingly made, used, offered for sale, and sold infrared detectors, or used methods that infringe upon RAYTHEON's rights under the '820 Patent and the '908 Reissue.

41. As a result of the infringement by INDIGO and FLIR, RAYTHEON has been damaged.

42. The willful infringement of the '820 Patent and the '908 Reissue by INDIGO and FLIR make this an exceptional case under 35 U.S.C. § 285.

## COUNT V

### TRADE SECRET MISAPPROPRIATION AND VIOLATIONS OF THE TEXAS THEFT LIABILITY ACT – TEX. CIV. PRAC. & REM. CODE §134.001 ET. SEQ.

43. RAYTHEON incorporates herein the allegations of Paragraphs 1 through 42.

44. RAYTHEON is the owner of all right, title and interest in various designs, techniques, processes and methods of fabrication of infrared detectors and cameras and their associated components incorporating such detectors, as well as experimental information related to the evaluation and selection of such designs, techniques and methods, including but not limited to: proprietary wire leads, proprietary mechanical isolator for use in Dewar, proprietary design of FPA substrate, proprietary platform and cold-finger materials, proprietary header feed-through design, proprietary window installation and unique read-out chip design architecture, unique and proprietary processes and manufacturing process architecture, incorporating processing techniques and steps that are unique and secret to RAYTHEON.  These designs, techniques, methods and information constitute trade secrets (the "Trade Secrets").

45. RAYTHEON derives independent economic value, both actual and potential, and is afforded an opportunity to obtain an advantage over its competitors from the fact that the Trade Secrets are not generally known to the public or to other persons who can obtain economic value from their disclosure or use.

46.     The Trade Secrets are the subject of efforts by RAYTHEON that are reasonable under the circumstances to maintain their secrecy.

47.     INDIGO and FLIR wrongfully acquired some or all of the Trade Secrets under circumstances giving rise to a duty to maintain their secrecy, from or through persons who owed RAYTHEON, or its predecessor-in-interest, a duty to maintain their secrecy and limit their use, and who had neither express nor implied consent to make such disclosure of that information, or knowingly or with reason to know from persons who had employed improper means to acquire the trade secret information.

48.     INDIGO and FLIR have misappropriated RAYTHEON's Trade Secrets.

49.     The misappropriation by INDIGO and FLIR has been willful and malicious.

50.     RAYTHEON has suffered damages as a result of the alleged misappropriation.

## COUNT VI

## UNFAIR COMPETITION BY MISAPPROPRIATION OF TRADE SECRETS

51.     RAYTHEON incorporates herein the allegations of Paragraphs 1 through 50.

52.     RAYTHEON's trade secrets and proprietary designs, techniques, processes and methods of fabrication of infrared detectors and cameras and their associated components, described *supra*, were discovered and developed solely as a result of extensive time, labor, skill, and money expended by RAYTHEON.

53.     Defendants used RAYTHEON's trade secrets and proprietary designs, techniques, processes and methods of fabrication of infrared detectors and cameras and their associated components in competition with RAYTHEON, thereby gaining a special advantage in that competition because the Defendants were burdened with little or none of the expense incurred by RAYTHEON.

54.     RAYTHEON has suffered commercial damage as a result of Defendants' unfair competition.

**WHEREFORE,** RAYTHEON prays for judgment that:

A.      United States Patent Nos. 5,021,663, 5,449,943 and 5,646,437, RE 34,908 and 5,043,820 (the "Patents") have been infringed by both INDIGO and FLIR;

B.      INDIGO and FLIR, their officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of the Patents;

C.      RAYTHEON be awarded damages sufficient to compensate it for the infringement, but in no event less than a reasonable royalty for such infringement, and that such damages be increased to three times the amount found or assessed pursuant to 35 U.S.C. § 284, together with prejudgment interest;

D.      RAYTHEON be awarded damages for tortious interference with existing contracts and prospective business relationships;

E.      Declares the case to be exceptional pursuant to 35 U.S.C. § 285 and that RAYTHEON be awarded its attorneys' fees, costs and expenses in this action;

F.      RAYTHEON be awarded damages for any losses caused by defendants' misappropriation of plaintiff's trade secrets, and related unfair competition including but not limited the disgorgement of any and all unjust enrichment enjoyed by the defendants as a result of their misappropriation that is not taken into account in computing damages for RAYTHEON's loss, but in no event less than a reasonable royalty; as well as the maximum damages allowed by the Texas Theft Liability Act, including actual damages, additional damages in the maximum amount allowed by law, attorneys' fees and costs.

G. Determines the misappropriation to have been willful and malicious and awarding exemplary damages in an amount twice those awarded in connection with misappropriation, together with RAYTHEON's attorneys' fees and costs to the extent permitted under law;

H. Both INDIGO and FLIR, their officers, agents, servants and employees, as well as any persons in active concert and participation with any of them, be permanently enjoined from further disclosure or use of the Trade Secrets;

I. INDIGO and FLIR, immediately return any and all documents, computer files, or other materials that directly or which may indirectly reveal the Trade Secrets;

J. RAYTHEON be awarded its costs; and,

K. RAYTHEON be awarded such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

RAYTHEON hereby demands a jury trial on all issues.

Respectfully submitted,

**FILED: MARCH, 2 2007**         ___/s/ Martin E. Rose_____
Martin E. Rose
Lead Attorney
Texas State Bar No. 17253100
Harold H. Walker, Jr.
Texas State Bar No. 20702200
Ross Cunningham
Texas State Bar No. 24007062
**ROSE•WALKER, L.L.P.**
3500 Maple Ave., Suite 900
Dallas, TX 75219
Telephone: (214) 752-8600
Facsimile: (214) 752-8700

**ATTORNEYS FOR PLAINTIFF**