**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| RAYTHEON COMPANY, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:07-cv-109 |
| | § | |
| INDIGO SYSTEMS CORPORATION and | § | |
| FLIR SYSTEMS, INC., | § | |
|    Defendants. | § | |

**MEMORANDUM OPINION & ORDER GRANTING IN PART DEFENDANTS'
EMERGENCY MOTION TO MODIFY THE AGREED PROTECTIVE ORDER**

Before the court are the "Defendants' Emergency Motion to Modify the Agreed Protective Order and to Modify the Confidentiality Designation of the Expert Report of Roger Holcomb and Robert Ginn" (de # 286) and a Response (de # 301) and Reply (de # 304) thereto.  In their Motion, the Defendants seek relief on two fronts: *first*, the Defendants ask the court to modify the Agreed Protective Order to allow greater access to discovery received from Raytheon and labeled as Protected Information under that Order and, *second*, the Defendants ask the court to reclassify the expert report of Holcomb and Ginn (the "Report") from "Confidential—Attorneys Eyes Only" to "Confidential."  Having considered the Motion, the arguments of the parties and the applicable law, the court is of the opinion that the Defendants' Motion should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

Raytheon filed this lawsuit against Indigo Systems Corporation and FLIR Systems in March of 2007 asserting a panoply of claims, misappropriation of trade secrets being of relevance here.  On August 31, 2007, the court entered a protective order stipulated to by the parties restricting the access of certain commercially sensitive and proprietary information to classes of persons enumerated in

that order.  The Agreed Protective Order represented the parties' negotiated resolution of several competing interests, including the efficient execution of discovery, appropriate access to information relevant to the claims and defenses in this civil action and adequate protection of exceptionally valuable proprietary information.  (de # 59 Preamble.)

The protective order allows each party to designate documents produced to the other side as "Protected Information" under a two-tier hierarchy of confidentiality.  Documents may be labeled as "Confidential" if the producing party in good faith believes that the unfettered distribution of their contents "could be potentially prejudicial" to its interests.  (*Id*. at ¶ 6a.)  Documents may be labeled as "Confidential—Attorneys' Eyes Only" if, in good faith, the disclosing party deems the information contained therein to be "among that considered to be most sensitive by the party." (*Id*. at ¶ 6b.)  "Attorneys' Eyes Only" documents are only to be viewed by outside counsel and certain independent experts for the receiving party.  (*Id*. at ¶ 9.)  "Confidential" information may be viewed by those persons and certain executives and technical personnel of the receiving party.  (*Id*. at ¶ 10.)

Raytheon's theory of trade secret misappropriation has been that Indigo engaged in the systematic hiring of its personnel during Indigo's nascency, thereby obtaining illicit access to Raytheon's proprietary information.  The Defendants request the court to modify the protective order to include those former employees of Raytheon that Raytheon accuses of stealing its trade secrets as persons entitled to access of Raytheon's "Protected Information."  (*See id*. at ¶ 1.)  Raytheon opposes this relief as being "a complete evisceration of the...protections afforded each party's most sensitive and secret information."  (Pl.'s Resp. 1.)  The Defendants also request that the court redesignate the Report as "Confidential."  This request is so that the personnel who are accused of piracy may assist the Defendants' outside experts in preparing a rebuttal to the Report.  Raytheon

opposes this relief because, it claims, such would expose decades of Raytheon research to one of its direct competitors resulting in irreparable harm.

## II.  DISCUSSION AND ANALYSIS

*A.     Modification of the Protective Order*

Rule 26(c) empowers the court to enter a protective order for good cause to protect a party from, among other things, revealing certain commercially sensitive information.  FED. R. CIV. P. 26(c)(1)(G).  The court enjoys broad discretion in entering and modifying any such order.  *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1268 (10th Cir. 2006); *Peoples v. Aldine Indep. School Dist.*, Civ. A. No. 06-2818, 2008 U.S. Dist. LEXIS 47946, at *4 (S.D. Tex. June 19, 2008). In deciding whether to modify a stipulated protective order at the behest of a party that originally agreed to the order for reasons related to the private interests of the parties to the action,[1] the court considers four factors: "1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification."  *Id*. at *5 (quoting *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006), in turn citing *Bayer*, 162 F.R.D. at 458).

First, the court considers the nature of the protective order.  Protective orders generally may be ascribed one of three labels.  Specific protective orders are the narrowest type and cover specifically identified information.  *Bayer*, 162 F.R.D. at 465.  Umbrella protective orders are at the

---

[1] This court hereby adopts the sound logic employed by the court in *Bayer AG v. Barr Lab.*, 162 F.R.D. 456, 460-62 (S.D.N.Y. 1995) in considering the status of the entity requesting modification of a protective order (either a party or non-party, private or governmental litigant) and the motivations for such a request (either private or public interest factors).

other end of the spectrum and provide for the designation of all discovery as protected without any screening by either the parties or the court. *Id.* Blanket protective orders, which require the parties to designate as protected that information that each side reasonably believes to be particularly sensitive are common in litigation between direct competitors. *Id.* Specific protective orders are the least susceptible to modification, umbrella protective orders are the most susceptible to modification, and blanket protective orders fall somewhere in between. *Murata*, 234 F.R.D. at 179. The protective order at issue here is a blanket order as it allows the parties to designate information as protected that they, in good faith, deem to be worthy of heightened secrecy. (de # 59 ¶ 7.) Though blanket orders are moderately susceptible to modification, the parties stipulated to the protective order, and that factor weighs against modification. *Bayer*, 162 F.R.D. at 466; *Murata*, 234 F.R.D. at 179; *Peoples*, 2008 U.S. Dist. LEXIS 47946 at *5-6. The nature of the protective order weighs in favor of denying modification.

Foreseeability in this context consists of inquiry into "whether the need for modification was foreseeable at the time the parties negotiated the original stipulated protective order." *Bayer*, 162 F.R.D. at 466. In other words, could the parties have been reasonably expected to anticipate the exigency which prompted the instant Motion? As stated above, Raytheon's theory of misappropriation has been consistent from the outset of this litigation. If the Defendants sought to have their decision-making and technical personnel, many of whom they knew to be accused of wrongdoing, intimately involved in the preparation of their defense to the misappropriation claim, that was a point that could have been negotiated into the protective order. *See Murata*, 234 F.R.D. at 180. Whether the Defendants' failure to secure access of protected information to their accused employees was an oversight or a result of the balance struck between the parties regarding the

competing interests addressed in the protective order, the Defendants should not now be allowed to dramatically and unilaterally reposition that balance at this stage in the litigation.

The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery. *Bayer*, 162 F.R.D. at 467; *Murata*, 234 F.R.D. at 180; *Peoples*, 2008 U.S. Dist. LEXIS 47946 at *6-7. It is important that litigants can place their confidence in the integrity of protective orders so that sufficient information passes between the parties "to secure the just, speedy, and inexpensive determination," Fed. R. Civ. P. 1, of lawsuits while protecting from excess dissemination that which rightly should be. *See Bayer*, 162 F.R.D. at 467. Raytheon has submitted that it would have more narrowly tailored its case in the absence of the protections afforded by the protective order, and the court has no reason to doubt this. (Resp. at 8.) Such reliance is elevated where, as here, the information at issue pertains to trade secrets, *Holland v. Summit Autonomous, Inc.*, Civ. A. No. 00-2313 C/3, 2001 US. Dist. LEXIS 12659, at *13 (E.D. La. Aug. 14, 2001), and where that information would be disclosed to a direct competitor. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000). Raytheon's reliance on the protective order counsels against modification.

Finally, the court considers whether good cause exists to modify the protective order. The Defendants argue that Raytheon has misused the protective order by designating a number of documents as protected information that should not be so designated. Moreover, they argue that their interest in putting forth their defense outweighs Raytheon's interest in confidentiality because appropriate measures will be taken to ensure that the information is not misused. Raytheon, on the other hand, argues that it will be severely prejudiced by the proposed modification because its risks exposing valuable trade secrets to technical personnel of a chief competitor.

Because the protective order was entered for good cause,[2] it is the Defendants' burden to establish good cause for modifying the order. *Bayer*, 162 F.R.D. at 464. The court must balance the Defendants' need for modification with Raytheon's need for protection and take into account available alternatives to the requested relief. *Id*. What the Defendants propose is a substantial redistribution of the protections secured by the protective order. They would have the court grant access to Raytheon's protected information to over 100 former Raytheon personnel to assist the Defendants' outside counsel in the preparation of their defense. Moreover, the Defendants do not state which level of protected information to which the personnel at issue would have access. This makes it difficult to craft alternatives that would strike the proper balance between the parties' competing interests here. The court finds that the Defendants have not established good cause for modification of the protective order on the scale proposed by the Defendants.

B.     *Redesignation of the Report*

The Defendants also seek to have the Report reclassified as "Confidential" from "Confidential—Attorneys Eyes Only." The Report is over 100 pages and contains the findings of two of Raytheon's experts regarding its trade secret misappropriation claim. Raytheon describes it as "a virtual 'how to' manual for the infrared detection technology developed by Raytheon over the past thirty years." (Resp. at 13-14.) The Defendants claim that their ability to adequately respond to the Report is vital to their defense and that the personnel accused of trade secret theft must be allowed to participate in preparing that response for it to be adequate. (Mot. at 3.)

---

[2] Neither party argues that the protective order was not entered for good cause. And because this civil action involves disputes between direct competitors in a lucrative market regarding highly sensitive information, the court finds that the protective order is supported by, and was entered on, good cause. *Bayer*, 162 F.R.D. at 464.

While the court understands Raytheon's trepidation in this area, the Defendants must be allowed to respond sufficiently to the serious charges leveled at them. The court notes that Raytheon's trade secret claim has been a virtual moving target through this litigation, ranging from 4 to over 100 alleged stolen trade secrets. (*Compare* de # 66 at 4, n.3 *with* de # 66 at 23-24.)[3] The Report addresses 30 trade secrets allegedly stolen by the Defendants. Raytheon points out, and correctly so, that the Defendants' independent experts are allowed to review "Attorneys' Eyes Only" documents under the protective order. However, as the Defendants also correctly argue, the contents of the Report merely reflect information alleged to be known already by the Defendants' employees. Yet, each employee would not have known everything contained in the Report.

Therefore, allowing the accused personnel unbridled access to the Report would be an overly broad and imprudent solution to the issue presented by the Defendants' request. The court will not reclassify the Report as "Confidential." The following solution, however, represents a balanced approach that takes into account the parties' clashing interests. On March 25, 2008, Judge Bush made a ruling allowing those employees of the Defendants who were to be deposed in this case to be told the trade secret that Raytheon had accused them of misappropriating. (Resp. at Ex. D. 30:22-31:10.) Judge Bush based this ruling on an understanding that, although Raytheon wanted to limit the information available to its competitors' employees, the Defendants were entitled to distribute enough information so that the witnesses could be prepared for their depositions.

The court is confronted here with a similar circumstance. The court will allow those employees of the Defendants who have already been deposed to assist in the preparation of the

---

[3] Though the number of trade secrets allegedly stolen has varied rather dramatically, Raytheon's theory of misappropriation has been consistent, as discussed above.

Defendants' rebuttal to the Report on a limited basis. Any employee who has been deposed may assist the Defendants' outside experts in the Defendants' response to the Holcomb-Ginn Report only to the extent reasonably necessary and only in connection with those portions of the Report containing topics that were covered during the given employee's deposition. Therefore, if the Report covers only topics not covered in a given employee's deposition, that employee may not access the Report as per the protective order. Likewise, if a given employee has been accused of abusing Raytheon's proprietary information but was not deposed, that employee may not have access to the Report. The Defendants' outside counsel shall appropriately redact the Report to comply with these instructions. Any persons allowed to see portions of the Report by virtue of this order shall complete and sign the form attached to the protective order indicating their assent to be personally bound thereby.

While the court respects Raytheon's concerns, it is Raytheon that has thrust forth its trade secrets, exposing them to scrutiny, and the Defendants must be allowed to confront the allegations made against them. This solution traces the contours of the ruling made by Judge Bush, and it ensures that additional information does not leak to the Defendants' personnel who are outside of the protective order and who do not already know the information contained in those excerpts of the Report that they will be allowed to see.

### III. CONCLUSION

Based on the foregoing, the court finds that the protective order should not be modified as requested by the Defendants. The court also finds that the Holcomb-Ginn Report should not be reclassified as "Confidential." However, in balancing the parties' interests, the court finds that certain of the Defendants' employees should be granted limited access to the Report as described

above.  Therefore, the court is of the opinion that the "Defendants' Emergency Motion to Modify the Agreed Protective Order and to Modify the Confidentiality Designation of the Expert Report of Roger Holcomb and Robert Ginn" (de # 286) should be, and hereby is, DENIED, insofar as it requests modification of the protective order.  The court is further of the opinion that the Motion should be, and hereby is, DENIED insofar as it requests the wholesale reclassification of the Holcomb-Ginn Report.  The court is further of the opinion that the Motion should be, and hereby is, GRANTED insofar as it requests that the Defendants employees be entitled to greater access to the Holcomb-Ginn Report, but only on the limited basis described above.

    IT IS SO ORDERED.

**SIGNED this the 17th day of September, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE