IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RAYTHEON COMPANY,           § | |
|     Plaintiff,                           § | |
|                                                   § | |
| v.                                              § | Case No. 4:07-cv-109 |
|                                                   § | |
| INDIGO SYSTEMS CORPORATION and § | |
| FLIR SYSTEMS, INC.,            § | |
|     Defendants.                        § | |

**MEMORANDUM OPINION & ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO EXCLUDE
PROPOSED REBUTTAL REPORT OF ART SIMMONS**

Before the court are the following:

1. Plaintiff's Motion to Exclude Proposed Rebuttal Report and Expert Testimony of Art Simmons Regarding Trade Secret Issues (de # 367);

2. Defendants' Response to Plaintiff's Motion to Exclude Proposed Rebuttal Report and Expert Testimony of Art Simmons Regarding Trade Secret Issues (de # 386);

3. Plaintiff's Reply in Support of Motion to Exclude Proposed Rebuttal Report and Expert Testimony of Art Simmons Regarding Trade Secret Issues (de # 397); and

4. Defendants' Sur-reply in Opposition to Plaintiff's Motion to Exclude Proposed Rebuttal Report and Expert Testimony of Art Simmons Regarding Trade Secret Issues (de # 409).

Having considered the Motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the Motion should be GRANTED IN PART and DENIED IN PART.

## I. INTRODUCTION

Raytheon filed this Motion challenging the expert rebuttal report submitted by Art Simmons on behalf of the Defendants. In his report, Simmons addresses issues surrounding 9 of the 30 trade secrets that Raytheon accuses the Defendants of stealing. Simmons' report is a rebuttal to the expert report submitted by Roger Holcombe and Robert Ginn on behalf of Raytheon. Raytheon argues that

Simmons' expert testimony should be excluded because Simmons is not qualified to offer opinions on the subject technology, his opinions are based on insufficient evidence and he reaches conclusions not supported by the evidence.

## II.  LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme Court instructed district courts to function as gatekeepers and determine whether expert testimony should be presented to the jury.  District courts must ensure that a proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702.  Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  The *Daubert* analysis "appl[ies] to all species of expert testimony . . . ." *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003); *accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In deciding whether to admit or exclude expert testimony, district courts should consider numerous factors.  *Daubert*, 509 U.S. at 594.  First, the court should consider the question of whether a theory or technique can be tested and has been tested.  *Id*. at 593.  Second, the court should examine whether the theory or technique at issue "has been subjected to peer review and publication."  *Id*.  Third, the court should normally consider "the known or potential rate of error" of the challenged method.  *Id*. at 594.  Fourth, the court may ascertain the degree of acceptance of a particular method or technique.  *Id*.  In evaluating *Daubert* challenges, district courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate."  *Id*.

The *Daubert* factors are not "a definitive checklist or test."  *Id*. at 593.  As the Court has emphasized, the *Daubert* framework is "a flexible one."  *Id*. at 594.  Accordingly, the decision to

allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (internal citation omitted).

### III.  DISCUSSION & ANALYSIS

*A.     Simmons' Qualifications*

Raytheon's first attack on Simmons' proffered testimony is that he is allegedly unqualified to offer opinions on InSb-based infrared imaging equipment. Raytheon's argument is that Simmons' experience with infrared imaging devices is rooted almost exclusively in mercury-cadmium-telluride ("mercad") arrays, and the differences between that technology and the technology at issue in this case are so substantial that he is not qualified to opine on InSb arrays. The Defendants point out that Simmons does have some experience with InSb arrays (albeit a one year project nearly 40 years ago). The Defendants' primary argument, however, is that the technology with which Simmons has worked is sufficiently similar to the technology here at issue that Simmons is able to offer meaningful analysis thereof. The court agrees with the Defendants.

The Fifth Circuit has long focused on the proposed expert's methodology, generally leaving disputes as to the quality of the expert's experience to the jury to consider in assigning weight to the expert's opinions. "[T]he heart of *Daubert* is relevance and reliability. As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999). Stated otherwise, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (internal quotation marks omitted). The

qualifications issue has been described as presenting a "low threshold" for the proponent to clear. *Thomas v. Deloitte Consulting LP*, No. 3-02-CV-0343-M, 2004 U.S. Dist. LEXIS 30736, at *11 (N.D. Tex. Nov. 30, 2004).

Simmons has worked as a technician in infrared imaging fabrication beginning in 1968 when he began working for Texas Instruments. By 1978, Simmons had completed an undergraduate program in electronic science and a graduate program in electrical engineering, both at Southern Methodist University. During his time at Texas Instruments, Simmons spent most of his time designing cooled infrared photodetectors. By the time of his retirement in 2004, Simmons was managing infrared imaging production teams. Raytheon's expert agrees that Simmons' expertise in mercad infrared photodetection devices "is unquestioned." (Pl.'s Reply Ex. A. ¶ 4.) Moreover, Raytheon's argument regarding the differences between InSb and mercad imaging devices is mitigated by the fact that several of the alleged trade secrets at issue can be applied to non-InSb infrared imaging devices. That certain techniques applicable to InSb devices can also be applied to non-InSb devices weakens Raytheon's argument that Simmons' mercad device experience is irrelevant to the fabrication of InSb devices. Simmons' experience with a different brand of cooled infrared imaging device is the type of subject that is ripe for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," not for exclusion. *Daubert*, 509 U.S. at 596; *accord Rushing*, 185 F.3d at 507.

B.   *Simmons' Alleged Legal Conclusions*

Raytheon next argues that Simmons cannot offer legal opinions regarding Raytheon's trade secret misappropriation claim. The Federal Rules of Evidence allow an expert to assert opinions that

"embrace an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a). Of course, an expert witness may not offer opinions that amount to legal conclusions. *C P Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001). Raytheon takes issue with several areas of Simmons report that it characterizes as offering inadmissible legal opinions.

First, Raytheon argues that Simmons cannot state an opinion that several of Raytheon's asserted trade secrets could have been reverse engineered and that they are, thus, not trade secrets. "In order for information to be a trade secret, it must not be generally known or readily ascertainable by independent investigation." *Hogan Sys. v. Cybresource Int'l., Inc.*, 158 F.3d 319, 324 (5th Cir. 1998). "The theoretical ability of others to ascertain the information through proper means does not necessarily preclude protection as a trade secret." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39(f) (1995). However, where acquiring trade secret information through proper means "would be difficult, costly, or time-consuming," that information is still afforded protection if it is not actually so acquired. *Id*. Simmons' conclusions that certain alleged trade secrets were readily ascertainable through reverse engineering is, therefore, an opinion relevant to the defense of Raytheon's misappropriation claim. That the Defendants did not actually go about ascertaining the purported trade secrets will no doubt quite forcefully undercut Simmons' opinion, but it remains a factual opinion that is both relevant and within his sphere of expertise. Simmons may not, however, offer testimony to the effect that Raytheon does not actually own the trade secrets it asserts because they are allegedly subject to independent discovery. Such would be an inadmissible legal opinion. *C P Interests, Inc.*, 238 F.3d at 697.

Second, Raytheon argues that Simmons' report reaches a false conclusion on the basis of a faulty legal opinion that Raytheon may not prove its case by circumstantial evidence. If Simmons

did offer such an opinion, it would quite obviously be inadmissible. *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1136 (E.D. Cal. 2008). Raytheon's argument nonetheless fails for two reasons. First, Simmons' conclusion that the Defendants did not infringe trade secret 23 is based on much more than the single piece of circumstantial evidence Raytheon discusses in its briefing. Second, Simmons reached his conclusion with respect to the evidence based on his investigation. He simply disagrees with Raytheon's assessment as to what the circumstantial evidence surrounding trade secret 23 shows. Raytheon is free to introduce evidence that would tend to support its view of the circumstances surrounding the alleged misappropriation of trade secret 23. Resolution of that dispute is the province of the jury, not of the court.

Third, Raytheon objects to Simmons conclusions' that trade secrets 20, 22 and 25 are described with insufficient detail to identify the trade secrets. Simmons does opine that these trade secrets, as described, do not meaningfully differ from information that is widely known in the industry. These are valid opinions; nowhere does Simmons conclude that trade secrets 20, 22 and 25 are not actually trade secrets because of the generality of their description. Raytheon will be able to introduce evidence that these trade secrets, as described by Raytheon's experts, do differ from practices common to the industry.

Fourth, Raytheon takes issue with Simmons' conclusion that the development of certain Raytheon trade secrets has not been properly documented. Raytheon is correct in its argument that Simmons may not conclude on the basis of such a shortcoming that certain information does not receive trade secret protection. However, the lack of documentation is relevant to the value of the trade secret. "[A] significant expenditure of time, money, or effort in the production of information

is evidence of its value." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 cmt. e (1995). The fact that documentation of a trade secret's development is sparse constitutes an opinion of fact, and it is evidence of the trade secret's value.

Fifth, Simmons concludes that many of the trade secrets claimed by Raytheon addressed in his report consist of elements found in the public domain. Raytheon reads Simmons' report as concluding that, because elements of these trade secrets may be found in the public domain, the information cannot be considered a trade secret. But Simmons does not reach such conclusions. Of course, if Simmons did draw such conclusions, they would be inadmissible legal opinions. "[A] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectible secret." *Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1202 (5th Cir. 1986) (internal citation omitted). Thus, Simmons' opinion that certain trade secrets consist merely of information that was in the public domain at the time of the alleged misappropriation is relevant and within his sphere of expertise.[1] And if Raytheon can convince the jury that it did create some unique process, even solely out of publicly available knowledge, then it may recover damages if the jury finds that trade secret to have been wrongfully used by the Defendants. But those are decisions to be made by the jury, not by the court at this stage.

---

[1] Raytheon rightfully points out that, for the Defendants to absolve themselves of liability on the basis of information being in the public domain, it must have been publicly available at the time of the alleged misappropriation. *See EEMSO, Inc. v. Compex Techs., Inc.*, No. 3:05-cv-0897, 2006 U.S. Dist. LEXIS 67225, at *17 (N.D. Tex. Aug. 31, 2006); *B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 505-06 (9th Cir. 2006). A trade secret's eventual entry into the public domain does not absolve past wrongful usage thereof.

C.     *Other Issues Addressed by the Parties*

Raytheon argues that some of the documentation cited by Simmons in his report does not actually support Simmons' conclusions that trade secrets 16-18 and 23 exist in the public domain. With regard to trade secrets 16-18, Simmons admitted in his deposition that the documents cited in his report do not actually support his conclusions that Raytheon's claimed trade secrets exist in the public domain. (*See* Deposition Excerpts cited in de # 367 n.51.) Likewise, the patent application from which Simmons draws his conclusion that trade secret 23 exists in the public domain discusses a process unlike that allegedly practiced by both Raytheon and the Defendants. Because the documentation provided by Simmons to support his conclusions that trade secrets 16-18 and 23 are in the public domain do not actually make such a demonstration, Simmons' public domain expert opinions with regard to those trade secrets shall be excluded.

The remainder of the issues addressed in the briefing (Simmons' use of Dr. Barton's off-the-record commentary, Simmons' discussion of "good engineering" documentation and Simmons' conclusions regarding the timeline of the development of trade secret 18) are arguments over the weight to be given Simmons' conclusions. As an expert witness, Simmons may use evidence that is "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," even if that evidence is not otherwise admissible. FED. R. EVID. 703. The court finds that the remainder of the parties' arguments go either to the nature of the evidence relied upon by Simmons, which is covered by Rule 703, or to Simmons resolution of the available evidence, which the court finds to be both reasonable and sufficiently reliable to support its admission. Sorting through the competing conclusions drawn from the available evidence is a task best left to the jury. *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999).

## IV. CONCLUSION

Based on the foregoing, the court finds as follows:

1. Art Simmons' prior experience with infrared imaging device fabrication qualifies him to testify regarding the technology at issue.

2. Art Simmons is not qualified to assert legal conclusions. Under the Federal Rules of Evidence, he may offer opinions that "embrace an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a).

3. Art Simmons' conclusions that trade secrets 16-18 and 23 existed in the public domain at the time of the alleged misappropriation are to be excluded because he apparently has not relied on any evidence that would support such conclusions.

Accordingly, the court finds that the "Plaintiff's Motion to Exclude Proposed Rebuttal Report and Expert Testimony of Art Simmons Regarding Trade Secret Issues" (de # 367) should be, and hereby is, GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

**SIGNED this the 17th day of February, 2009.**

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE