U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RAYTHEON COMPANY, a Delaware Corporation, | § § § | Case No. 4:07-cv-00109-RAS |
| Plaintiffs, | § § | TRIAL BY JURY DEMANDED |
| v. | § § § | |
| INDIGO SYSTEMS CORPORATION, a California Corporation, and FLIR SYSTEMS, INC., an Oregon Corporation, | § § § § § | |
| Defendants. | | |

## DEFENDANTS' ANSWER TO
## PLAINTIFF'S FOURTH AMENDED COMPLAINT

Defendants Indigo Systems Corporation ("Indigo"), now known as FLIR Commercial Vision Systems, Inc., and FLIR Systems, Inc. ("FLIR") (together, "Defendants") file this Answer to the Fourth Amended Complaint filed by Plaintiff Raytheon Company ("Raytheon"), based on personal knowledge as to their own actions and on information and belief as to all other matters. Any factual allegation not expressly admitted herein is denied.

### I.

### PRELIMINARY STATEMENT

In bringing this action, Raytheon—Defendants' well-heeled competitor and a long-standing military contractor—asserts stale, decade-old meritless allegations of trade secret misappropriation, all with the transparent goal of maintaining its dominant market position and seeking to reverse Defendants' successes against Raytheon in winning several large government

contracts and in meeting the United States military's goal of achieving true procurement reform. Raytheon's ulterior motive is to obtain from this Court what it cannot achieve in the marketplace.

Raytheon filed its meritless claims in bad faith seeking to discredit Defendants and their products so it can attempt to regain the upper hand in the procurement of large government military contracts. Accordingly, Defendants seek an award of reasonable attorneys' fees, costs, and expenses pursuant to § 3426.4 of the California's Uniform Trade Secrets Act and the Texas Theft Liability Act.

## II.

## JURISDICTION AND VENUE

1. The allegations contained in paragraph 1 of the Fourth Amended Complaint are statements of law, to which no responsive pleading is required. To the extent they allege any unlawful conduct or wrongdoing on the part of Defendants to which a response is required, Defendants deny the allegations contained in paragraph 1 of the Fourth Amended Complaint.

2. In response to paragraph 2 of the Fourth Amended Complaint, Defendants admit that Raytheon and Defendants are citizens of different states and Raytheon alleges damages in excess of $75,000. No response is required to the remaining portions of paragraph 2 of the Fourth Amended Complaint because they constitute legal conclusions.

3. The allegations contained in paragraph 3 of the Fourth Amended Complaint are statements of law, to which no responsive pleading is required. Defendants, however, deny that venue is proper in this judicial district.

## III.

## PARTIES

4. The allegations contained in the second sentence of paragraph 4 of the Fourth Amended Complaint are statements of law to which no responsive pleading is required.

Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the remaining sentences of paragraph 4 of the Fourth Amended Complaint and, on that basis, deny those allegations.

5. Defendants admit the allegations contained in paragraph 5 of the Fourth Amended Complaint.

6. Defendants admit the allegations contained in paragraph 6 of the Fourth Amended Complaint.

## IV.

## FACTS

7. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of the Fourth Amended Complaint and, on that basis, deny those allegations.

8. Defendants deny the allegations in the first and fifth sentences of paragraph 8 of the Fourth Amended Complaint. Defendants admit the allegations contained in the second, third, and fourth sentences of paragraph 8 of the Fourth Amended Complaint.

9. Defendants deny the allegations contained in paragraph 9 the Fourth Amended Complaint.

10. Defendants deny the allegations contained in paragraph 10 of the Fourth Amended Complaint.

11. Defendants deny the allegations contained in paragraph 11 of the Fourth Amended Complaint. Specifically, Defendants deny Indigo made representations to Raytheon that led to Raytheon and Indigo developing a "collaborative relationship" or confidential relationship as alleged in paragraph 11 of the Fourth Amended Complaint. Defendants deny there ever existed any "collaborative relationship" between Raytheon and Indigo. In response to the allegations

contained in paragraph 11 of the Fourth Amended Complaint regarding the CDAs, Defendants state that the documents speak for themselves.

12.     In response to the allegations contained in paragraph 12 of the Fourth Amended Complaint, Defendants admit that Indigo and Santa Barbara Research Center ("SBRC") entered into CDAs in March, June, and October 1996, and in February and November 1997.  These CDAs were entered into with a view to Indigo providing ROIC designs to SBRC and they were tailored to the provision of technical information and data related to the design of ROICs.  All other allegations contained in paragraph 12 of the Fourth Amended Complaint are denied.

13.     Defendants deny the allegations contained in paragraph 13 of the Fourth Amended Complaint.  Specifically, Defendants deny that the October 1996 CDA was entered into by the parties so "Indigo could provide even more confidential design services to Raytheon."  Instead, the CDAs were entered into with a view to Indigo providing ROIC designs to SBRC and they were tailored to the provision of technical information and data related to the design of ROICs.

14.     Defendants deny the allegations contained in paragraph 14 of the Fourth Amended Complaint.  Specifically, Defendant deny that pursuant to the February 1997 CDA, Indigo received access to confidential Raytheon information that related to Raytheon's "infrared focal plane arrays and associated components, including, but not limited to electronics, detectors and dewars."  Further, Defendants deny any suggestion that "[t]his particular CDA became the controlling agreement that applied to all future work that Indigo performed for Raytheon, and governed the disclosure of confidential information for all contracts that would follow." Defendants deny the applicability of the February 1997 CDA.

15.     In response to the allegations contained in paragraph 15 of the Fourth Amended Complaint, Defendants admit that during Indigo's first year of existence it hired employees that

previously had been employed at Raytheon, or its predecessors, but deny any suggestion that Indigo deliberately began a program to "hire[] away" Raytheon's employees. Defendants lack knowledge or information sufficient to form a belief as to the truth of the second sentence of paragraph 15 of the Fourth Amended Complaint and, on that basis, deny those allegations. Defendants admit the allegations in the third sentence of paragraph 15 of the Fourth Amended Complaint. In response to the allegations contained in the fourth sentence of paragraph 15 of the Fourth Amended Complaint, Defendants state that the document speaks for itself. All other allegations contained in paragraph 15 of the Fourth Amended Complaint are denied.

16. Defendants deny the allegations contained in paragraph 16 of the Fourth Amended Complaint. In further response to the allegations contained in the second sentence of paragraph 16 of the Fourth Amended Complaint, Defendants state that the document speaks for itself.

17. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 17 of the Fourth Amended Complaint and, on that basis, deny those allegations. In response to the allegations contained in the first and second sentences of paragraph 17 of the Fourth Amended Complaint regarding the letters dated February 10, 1997 and April 2, 1997, Defendants state that the documents speak for themselves.

18. Defendants deny the allegations contained in paragraph 18 of the Fourth Amended Complaint. Specifically, Defendants deny that Indigo's outside counsel sent a letter to Raytheon's in-house counsel to "further assuage any lingering concerns"—Indigo's outside counsel, Michael Hallerud ("Hallerud"), informed Raytheon that Indigo was not actively recruiting Raytheon's personnel and that Indigo personnel were cautioned to not disclose the intellectual property of other companies. In response to the allegations contained in paragraph

18 of the Fourth Amended Complaint regarding the letter dated June 10, 1997, Defendants state that the document speaks for itself.

19. In response to paragraph 19 of the Fourth Amended Complaint, Defendants admit that, on or about July 30, 1997, the parties reached an accommodation regarding hiring of employees. Defendants deny the allegations contained in the second sentence of paragraph 19 of the Fourth Amended Complaint. In response to the allegations contained in paragraph 19 of the Fourth Amended Complaint regarding the agreement dated July 30, 1997, Defendants state that the document speaks for itself. All other allegations contained in paragraph 19 of the Fourth Amended Complaint are denied.

20. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 20 of the Fourth Amended Complaint and, on that basis, deny those allegations. Further, Defendants deny that Indigo made any representations to Raytheon concerning the protection of its intellectual property. All other allegations contained in paragraph 20 of the Fourth Amended Complaint are denied.

21. Defendants deny the allegations contained in the first sentence of paragraph 21 of the Fourth Amended Complaint. Specifically, Defendants deny they represented to Raytheon that "no misappropriation was occurring." Defendants admit that Raytheon awarded Indigo ten additional contracts to provide assistance on certain products in the years following February 1997, and that those contracts adopted the February 1997 CDA. All other allegations contained in paragraph 21 of the Fourth Amended Complaint are denied.

22. Defendants deny the allegations contained in paragraph 22 of the Fourth Amended Complaint.

23. Defendants deny the allegations contained in paragraph 23 of the Fourth Amended Complaint.

24. Defendants deny the allegations contained in paragraph 24 of the Fourth Amended Complaint.

25. Defendants admit the allegations contained in paragraph 25 of the Fourth Amended Complaint.

26. Defendants deny the allegations contained in paragraph 26 of the Fourth Amended Complaint.

27. Defendants deny the allegations contained in the first sentence of paragraph 27 of the Fourth Amended Complaint. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 27 of the Fourth Amended Complaint and, on that basis, deny those allegations.

28. Defendants deny the allegations contained in paragraph 28 of the Fourth Amended Complaint.

29. Defendants deny the allegations contained in paragraph 29 of the Fourth Amended Complaint.

30. Defendants deny the allegations contained in paragraph 30 of the Fourth Amended Complaint.

31. Defendants deny the allegations contained in paragraph 31 of the Fourth Amended Complaint.

32. Defendants deny the allegations contained in paragraph 32 of the Fourth Amended Complaint.

33. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Fourth Amended Complaint—namely, what Raytheon "knows" and "believes"—and, on that basis, deny those allegations. Further, Defendants deny that Raytheon's alleged belief is in good faith. All other allegations contained in paragraph 33 of the Fourth Amended Complaint are denied.

34. The allegations contained in paragraph 34 of the Fourth Amended Complaint are legal conclusions, to which no responsive pleading is required.

## COUNT I.

### TRADE SECRET MISAPPROPRIATION AND VIOLATIONS OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT

35. Defendants repeat and re-allege their responses to paragraphs 1 through 34 of the Fourth Amended Complaint.

36. Defendants deny the allegations contained in paragraph 36 of the Fourth Amended Complaint.

37. Defendants deny the allegations contained in paragraph 37 of the Fourth Amended Complaint.

38. Defendants deny the allegations contained in paragraph 38 of the Fourth Amended Complaint.

39. Defendants deny the allegations contained in paragraph 39 of the Fourth Amended Complaint.

40. Defendants deny the allegations contained in paragraph 40 of the Fourth Amended Complaint.

41. Defendants deny the allegations contained in paragraph 41 of the Fourth Amended Complaint.

42. Defendants deny the allegations contained in paragraph 42 of the Fourth Amended Complaint.

43. Defendants deny the allegations contained in paragraph 43 of the Fourth Amended Complaint.

44. Defendants deny the allegations contained in paragraph 44 of the Fourth Amended Complaint.

45. Defendants deny the allegations contained in paragraph 45 of the Fourth Amended Complaint.

46. Defendants deny the allegations contained in paragraph 46 of the Fourth Amended Complaint.

47. Defendants deny the allegations contained in paragraph 47 of the Fourth Amended Complaint, and deny that they have caused damages to Raytheon in any amount.

## COUNT II.

## FRAUDULENT CONCEALMENT

48. Defendants repeat and re-allege their responses to paragraphs 1 through 47 of the Fourth Amended Complaint.

49. Defendants admit the allegations contained in paragraph 49 of the Fourth Amended Complaint.

50. Defendants deny the allegations contained in paragraph 50 of the Fourth Amended Complaint.

51. Defendants deny the allegations contained in paragraph 51 of the Fourth Amended Complaint.

52. In response to the allegations contained in the first and second sentences of paragraph 52 of the Fourth Amended Complaint, Defendants admit that Raytheon and the

Defendants entered into the February 1997 CDA, but they deny that Indigo made any improper use of Raytheon's proprietary technology at any time. In response to the allegations contained in the third and fourth sentences of paragraph 52 of the Fourth Amended Complaint in regard to the February 1997 CDA, Defendants state that the document speaks for itself, and deny Raytheon's interpretation of the terms of the February 1997 CDA. All other allegations, including the allegations contained in the fifth sentence of paragraph 52 of the Fourth Amended Complaint, are denied.

53. Defendants deny the allegations contained in paragraph 53 of the Fourth Amended Complaint.

54. Defendants deny the allegations contained in paragraph 54 of the Fourth Amended Complaint. Defendants further deny the relief sought by Raytheon in its prayer, which is contained at the conclusion of paragraph 54 in the Fourth Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

55. Raytheon's Fourth Amended Complaint fails to state a claim upon which relief may be granted.

56. Raytheon's claims for relief are barred by the doctrine of waiver.

57. Raytheon's claims for relief are barred by its failure to mitigate its damages.

58. Raytheon's requested relief is barred in whole or in part by its unclean hands.

59. Raytheon's claims for relief are barred by the doctrine of laches.

60. Raytheon's claims for relief are barred by the doctrine of equitable estoppel.

61. Raytheon's claims are barred, in whole or in part, for lack of standing.

62. Raytheon has not suffered any damage or injury as a result of any act or conduct by Defendants.

63. Raytheon's damages, if any, were not caused, in whole or in part, by the alleged conduct of Defendants.

64. Raytheon's claims are barred, in whole or in part, by the doctrines of acquiescence and consent.

65. Raytheon's claims are barred, in whole or in part, because any actions taken by Defendants were fair and reasonable and were performed in good faith based on all relevant facts known to Defendants at the time.

66. Raytheon's claims are barred, in whole or in part, by the privilege of competition.

67. Raytheon's claims are barred, in whole or in part, by the doctrine of independent development.

68. Raytheon's claims fail to the extent that technology incorporated within Raytheon's alleged trade secrets is available in the public domain and, therefore, is readily ascertainable by proper means.

69. Raytheon's claims fail to the extent that they are preempted by the provisions of the California Uniform Trade Secrets Act.

70. Raytheon's claims are time-barred by applicable statutes of limitation.

71. Raytheon's claims are barred by the doctrine of release, because by an accommodation, effective August 1, 1997, Raytheon agreed to "release and discharge any and all claims of which they are presently aware against Indigo…and any other former Amber employee employed or engaged by Indigo, arising out of or concerning Indigo's employment or engagement of such former Amber employees and their performance of their Indigo responsibilities."

72. Defendants are entitled to an award of reasonable attorneys' fees and costs incurred in defending this lawsuit under § 3426.4 of the California's Uniform Trade Secrets Act because Raytheon's allegations that Defendants misappropriated Raytheon's purported trade secrets are objectively specious and are made in subjective bad faith to discredit the Defendants and their products so Raytheon can maintain its dominant position in securing lucrative government contracts.

   a. This litigation came as a result of Defendants' success in meeting the United States military's needs with a new procurement paradigm. In 2005, following its acquisition of Indigo, FLIR won the competition to supply the Target Acquisition Sensor Suite ("TASS") to the United States Army's Armed Reconnaissance Helicopter program ("ARH"). FLIR's victory came despite initial program specifications that favored Raytheon's products, and despite an early indication from top military officials that they preferred a helicopter platform that was only being offered with Raytheon's imaging/targeting product. The fact that Bell Helicopter Textron Inc. ("Bell"), the prime contractor, selected FLIR's BriteSTAR® II as the TASS solution for the ARH program illustrated that FLIR's competitive superiority was able to overcome inherent favoritism towards Raytheon's systems.

   b. Almost immediately after FLIR's ARH success was announced, Raytheon began and has since maintained a whisper campaign aimed to reverse FLIR's successes and to thwart future competitive efforts. In fact, FLIR was forced to win the ARH program again because based on Raytheon's efforts to undermine FLIR's accomplishments, the United States Army conducted a second fly-off between

    FLIR's and Raytheon's systems. In that fly-off competition, the time schedule was compressed, the avionics interface was revised, and other test parameters were altered in ways that once again favored Raytheon's products over FLIR's. Even against these headwinds, FLIR and its superior product again prevailed. Bell determined once and for all that FLIR's system was superior to Raytheon's in performance, reliability, cost, and supportability.

c. Raytheon, however, still would not admit defeat and continued its campaign to undermine FLIR's accomplishments. FLIR's success in securing the ARH contract was short-lived, as Raytheon engineered yet another opportunity to unseat FLIR as the principal purveyor of infrared detection systems to the United States military—this time through the Common Sensor Program ("CSP"). Under CSP, the Army sought a single common sensor solution across two aerial reconnaissance programs, the high-altitude ERMP unmanned vehicle and the low altitude ARH. Because the United States Army had already selected Raytheon as the sole ERMP sensor supplier, the CSP program would render Bell's ARH sensor selection obsolete by ensuring that a single company would become the dominant military supplier of the TASS component. The CSP specifications, announced on April 20, 2007, again heavily favored Raytheon's ERMP product, just as the ARH specifications did. But this time, the procurement competition occurred against the backdrop of this meritless lawsuit. It is no accident that this case was filed on the eve of the then-planned CSP announcement, serving to bolster Raytheon's ongoing campaign of disinformation about FLIR and its products.

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**    Page 13

    d. Despite Raytheon's efforts, its strategy to discredit FLIR and to unseat FLIR as the fastest-growing purveyor of infrared detection systems to the United States military has proven effective. The United States Army informed FLIR that its CSP proposal was rejected, despite the fact that, even with the cards stacked against it, FLIR has consistently shown the ability to outperform its rivals in the field of military procurement. Not surprisingly, on or about November 6, 2007, the military awarded the CSP contract to Raytheon instead. Thus, Raytheon, aided by its whisper campaign and the filing of this frivolous lawsuit, has succeeded in its goal of substantially interfering with FLIR's established and prospective dealings with the United States military.

    e. Raytheon's Fourth Amended Complaint is without basis on its face and is nothing more than a scheme to thwart the momentum cultivated by the Defendants' repeated successes of winning government contracts over Raytheon. The Fourth Amended Complaint relies on Indigo's successful bids on the Pentagon's Joint Strike Fighter and Litening targeting pod programs, which occurred eight and eleven years ago, respectively. Moreover, the allegations raised in Raytheon's Fourth Amended Complaint are baseless and transparently contrived as an attempt to avoid the application of the statute of limitations. In sum, Raytheon's motivation to proceed with this litigation is an ongoing bad faith effort to reverse Defendants' successes in the infrared market and continue to thwart the Defendants' future competitive efforts. Defendants, therefore, are entitled to an award of its reasonable attorneys' fees, costs, and expenses incurred in defending this lawsuit pursuant to §3426.4 of the California's Uniform Trade Secrets Act.

73. Defendants are entitled to attorneys' fees, costs, and expenses pursuant to the Texas Theft Liability Act.

74. Defendants have not knowingly and intentionally waived any applicable affirmative defenses and reserve the right to raise additional affirmative defenses as they become known to them through discovery in this matter. Defendants further reserve the right to amend their answer and/or affirmative defenses accordingly and/or to delete affirmative defenses that they determine are not applicable during the course of subsequent discovery.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully pray for Judgment as follows:

A. A judgment that Raytheon recover nothing by its Fourth Amended Complaint;

B. A judgment that Raytheon's Fourth Amended Complaint be dismissed with prejudice and that each request for relief therein be denied;

D. Attorneys' fees, costs, and expenses including pursuant to California's Uniform Trade Secrets Act, § 3246.4 and the Texas Theft Liability Act; and

E. Such other and further relief as the Court may deem just and proper.

Dated:  September 23, 2013  Respectfully submitted,

By: /s/ Clyde M. Siebman

SIEBMAN, BURG, PHILLIPS & SMITH, L.L.P.
Clyde M. Siebman
State Bar No.18341600
Lawrence A. Phillips
State Bar No. 15937755
300 N. Travis
Sherman, Texas 75090
Telephone: (903) 870-0070
Facsimile: (903) 870-0066
clydesiebman@siebman.com
larryphillips@siebman.com

BICKEL & BREWER

William A. Brewer III
State Bar No. 02967035
Michael J. Collins
State Bar No. 00785493
Charles Dunham Biles
State Bar No. 24042407
1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015
wab@bickelbrewer.com
mjc@bickelbrewer.com
cdb@bickelbrewer.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 23rd day of September, 2013, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

    /s/ Clyde M. Siebman
Clyde M. Siebman

## JURY DEMAND

Defendants demand a jury trial on all issues triable to a jury.

Dated: September 23, 2013

Respectfully submitted,

By: /s/ Clyde M. Siebman
SIEBMAN, BURG, PHILLIPS & SMITH, L.L.P.
Clyde M. Siebman
State Bar No.18341600
Lawrence A. Phillips
State Bar No. 15937755
300 N. Travis
Sherman, Texas 75090
Telephone: (903) 870-0070
Facsimile: (903) 870-0066
clydesiebman@siebman.com
larryphillips@siebman.com

BICKEL & BREWER

William A. Brewer III
State Bar No. 02967035
Michael J. Collins
State Bar No. 00785493
Charles Dunham Biles
State Bar No. 24042407
1717 Main Street, Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015
wab@bickelbrewer.com
mjc@bickelbrewer.com
cdb@bickelbrewer.com

**ATTORNEYS FOR DEFENDANTS**